[Crim. No. 3591. Fourth Dist., Div. One. Oct. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANDREW TRACY, Defendant and Appellant.

**COUNSEL**

John J. McCabe, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lazubir L. Butler, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AULT, J.**—On May 3, 1968, in action No. C-19511, the district attorney of Orange County filed a six-count information charging appellant, Michael Andrew Tracy, with three counts of robbery (Pen. Code, § 211), one count of kidnapping for the purpose of robbery (Pen. Code, § 209), one count of grand theft (Pen. Code, §§ 484-487), and one count of driving a vehicle without the consent of the owner (Veh. Code, § 10851). A co-defendant was jointly charged with the robberies and with kidnapping for

the purpose of robbery. The information also charged Tracy was armed with a deadly weapon at the time of each robbery.

On May 3, 1968, the public defender was appointed to represent Tracy, who was then arraigned, entered a plea of not guilty to all counts, and demanded a jury trial. The case was set for trial in Department V on June 26, 1968. On the trial date, Tracy appeared with the public defender in Department V, and the case was sent to Department I for change of plea. However, in Department I, the public defender moved to institute proceedings under Penal Code section 1368 and requested a hearing to determine Tracy's present sanity. The motion was granted. Criminal proceedings were suspended, the court appointed Dr. Kramer and Dr. Kosewick as medical examiners and ordered them to examine Tracy and report to the court as required by law. Both doctors found him to be presently sane. On July 15, 1968, he appeared in court with his counsel, waived a formal hearing and stipulated the issue of his present sanity could be heard and determined on the doctors' written reports. The trial court found him presently sane, terminated the present sanity proceedings and reinstituted the criminal proceedings. Trial was set for August 14, 1968.

On August 12, 1968, Tracy appeared in court with the public defender. On motion of the district attorney, Count V of the information, charging robbery, was amended to allege he was armed with a "dangerous" rather than a "deadly" weapon at the time of the robbery. The district attorney stated if Tracy wished to plead guilty to Count V, as amended, he would recommend immediate referral to the diagnostic clinic under Penal Code section 1203.03, "primarily for the purpose of ascertaining whether or not he should be ultimately sentenced as a youthful offender under section 1203-B [Pen. Code, § 1202b]." After a thorough examination by the judge, Tracy was permitted to withdraw his plea of not guilty to Count V and to enter a plea of guilty. He waived time for the pronouncement of judgment and the right to apply for probation. The court ordered him referred to the California Institution for Men at Chino, pursuant to Penal Code section 1203.03, for a diagnostic study and report before the imposition of sentence. Upon motion of the district attorney, the other five counts of the information were dismissed.

On August 30, 1968, a new four-count information (No. C-20026), arising out of events occurring in the Orange County jail before Tracy could be transported to Chino, was filed. The information was directed against Tracy and two codefendants. Three of the counts involved Tracy. He was charged in Count I with escape from custody while held for felonies (Pen. Code, § 4532, subd. (b)), in Count III with kidnapping (Pen. Code, § 209), and in Count IV with assault with a deadly weapon

upon a police officer engaged in the performance of his duty (Pen. Code, § 245, subd. (b)).

On the date the new information was filed, Tracy appeared before the same judge who had sent him to Chino for observation after his plea of guilty to Count V of the first information. The public defender was again appointed to represent him, and later in the day he announced Tracy was ready to plead to Count IV of the information, charging assault on a police officer. Again after a thorough examination by the judge, Tracy was permitted to enter a plea of guilty to Count IV of the second information. No disposition was made of the escape and kidnapping charges on that date or at any other time.[1] The court again referred him to Chino for observation and report under Penal Code section 1203.03.

On October 24, 1968, the Department of Corrections transmitted the written report of its diagnostic study to the Orange County Superior Court. The letter of transmittal specifically referred to both cases No. C-19511 and No. C-20026. The report contained a psychiatric evaluation in which it was stated of Tracy: "This is a markedly disturbed young man whose flattened affect, ambivalence, disorganization, and abnormal content are sufficient for a diagnosis of paranoid schizophrenic. This examiner would agree with him that he needs the services of an inpatient psychiatric facility, but certainly cannot be trusted to obtain this service voluntarily. A commitment to the Department of Mental Hygiene would be the placement of choice at this time. His criminal activity cannot be separated from his schizophrenic illness and seems mostly a manifestation of bad judgment in which a latent aggressiveness is activated. With proper treatment continued on an outpatient basis, it could be hoped that he would make the kind of passive social adjustment that many treated schizophrenics do." Under the heading "Psychiatric Diagnosis" the report indicated—

"Schizophrenic reaction, paranoid type." It recommended: "Immediate return to court for commitment as mentally ill, indicating that his illness has led to criminal acts which could easily be dangerous to himself or others. Court should retain jurisdiction to make sure that in the event of his release proper treatment is continued and society adequately protected." The letter of transmittal stated: "It is respectfully recommended to the Honorable Court that Michael Andrew Tracy be referred under Section 5551 Welfare and Institutions Code for eventual commitment to the California Department of Mental Hygiene."

On November 1, 1968, after receiving the report and recommendation

---

[1] We ascertain this to be true from the statement to that effect made in the Attorney General's brief, and from the superior court files which we have ordered transmitted to this court under rule 12(a) California Rules of Court.

from Chino, the judge in Department I of the Orange County Superior Court signed an order for Tracy's return to the court. On November 12, the same judge ordered a probation report and set the hearing "re: Probation and Pronouncement of Judgment" in his department for November 21. On that date Tracy appeared in Department I with the public defender who, apparently on the basis of the report received from Chino, moved, under Penal Code section 1368, for a hearing to determine Tracy's present sanity. The motion was granted. The judge in Department I again suspended criminal proceedings, appointed Dr. Kosewick and Dr. Buehler to examine Tracy and set the present sanity hearing for December 16 in Department V.

Both doctors found Tracy to be presently sane. In their written reports, both expressed the opinion he was sane at the time the crimes were committed, able to deliberate and premeditate, understood the nature and purpose of the proceedings taken against him, and was able to aid his counsel in his defense in a rational manner. Oddly enough, with remarkable prescience, both doctors gratuitously opined Tracy was able "to conduct his own defense."

While both doctors found Tracy presently sane within the meaning of Penal Code section 1368, and legally sane at the time of the alleged offenses, their reports both indicated he was suffering from serious mental illness. Dr. Kosewick stated: *"Diagnostic Impression*: The defendant shows evidence of an inadequate personality and a sociopathic personality disturbance in an individual with symptoms of a paranoid type schizophrenic reaction. Because of his tendency to react impulsively in a violent manner, in my opinion he represents a danger to the health and safety of others.

" . . . . . . . . . . . . . . . .

*"Recommendation*: Because of the persistence of the auditory hallucinations and the appearance of visual hallucinations, it is recommended that the defendant be committed to a state hospital for psychiatric treatment. I believe he would benefit from such treatment."

On December 16, 1968, Tracy appeared in Department V with Mr. Bovee, a deputy public defender and the following conversation took place immediately after the court called the case:

"Mr. Bovee: Under the report that came back from Chino, the doctor who examined Mr. Tracy apparently feels he should be committed to the Department of Mental Hygiene. He has serious mental problems.

"Both Dr. Kosewick and Dr. Buehler report that he was not 1026 and he is not presently 1368. [Pen. Code, §§ 1026, 1368].

"I explained to Mr. Tracy he could submit the matter on the reports, in which event he would be found presently sane and would be sentenced at this time, or that if he did not agree with that course of action he could set the matter down for a contested hearing.

"Apparently Mr. Tracy wishes to do neither. He wishes to withdraw his plea at this time.

"That is my understanding, in any event."

The court then reminded Tracy the matter of the change of plea had been thoroughly discussed at the time it was made and asked him about it. Tracy disagreed and concluded with the statement which we quote together with the remarks of the public defender and the court which followed immediately.

[TRACY]: "The Public Defender would never give me my right or told me anything about what I could do for my rights, and at the same time I do know my rights and I wish to go pro. per., also.

"MR. BOVEE: We have no objection to that, your Honor.

"THE COURT: "I'll bet you wouldn't."

At this point the court questioned Tracy concerning his knowledge about the charges which had been filed against him: robbery, grand theft, kidnapping and driving a vehicle without the consent of the owner. In reply to the court's questions, in most instances, Tracy demonstrated a fairly adequate comprehension of the elements of the crimes with which he had originally been charged. The court also inquired concerning any defenses which were available to him, and Tracy answered he had witnesses who could prove he was not present at the time and place of the crimes. The judge questioned Tracy concerning his past appearances in court and elicited the fact that Tracy had appeared in adult court and pled guilty to violation of Vehicle Code section 10851 and Penal Code section 484 on a previous occasion. He ascertained Tracy was 21 years of age and advised him of the difficulty of preparing for trial while in custody. At the conclusion of this discussion, the deputy district attorney stated:

[MR. WELLS]: "Might I suggest, what is his current mental status?

"Are we here for determination of that? Before we let him do anything on his own we ought to find out whether he is sane or not.

"THE COURT: He wants to represent himself, and I am perfectly satisfied to have him represent himself, and I am sure the Public Defender will be grateful beyond all possibility of expression to get rid of the case.

"I am satisfied that Mr. Tracy knows what he is doing.

"I am satisfied that Mr. Tracy by this time is knowledgeable enough in the ways of the law to effectively represent himself, although no one can as effectively represent himself as he could were he represented by someone skilled in the profession.

"The law makes it quite clear that a man is entitled to represent himself once he has been able to persuade the Court that his waiver of counsel is an intelligent waiver, and I think that Mr. Tracy's waiver is intelligent.

"So, I will allow Mr. Tracy to represent himself.

"I will relieve the Public Defender from further representation in this case.

"Now, let us proceed to the case: . . . . . . . . . .

"THE COURT: So, the first order of business is, do you want a trial on the question of whether you are presently sane or not, or are you satisfied with the doctors' evaluation of you that you are sane?

"THE DEFENDANT: I am very satisfied with the doctors.

"THE COURT: You say you are satisfied with their reports that you are presently sane?

"THE DEFENDANT: Yes, sir.

"THE COURT: In that case then, the usual practice is that this issue be submitted on the reports of the doctors rather than have it set down for a hearing and have these two doctors come in and testify.

"To do so, it is necessary that you waive your right to be confronted by these witnesses and request that I determine this matter based upon the doctors' reports, and *I will tell you right now I agree with them.* (Italics added.)

*"I don't think you are insane by any stretch of the imagination.* (Italics added.)

"Do you wish to submit the matter on the doctors' reports?

"A. Yes, sir, your Honor.

"THE COURT: And you agree with this?

"MR. WELLS: [the deputy district attorney] Yes, your Honor.

"THE COURT: The matter will be submitted on the doctors' reports.

"The Court will find that the defendant is presently sane."

Tracy was also permitted to discharge his attorney in action No. C-20026. His motions to set aside his plea of guilty to robbery in the first action and to assault on a police officer in the second were denied. He was sentenced to prison for the term prescribed by law on both charges. The sentences were ordered to run concurrently. He appeals from the judgments of conviction in both cases.[2]

On appeal, Tracy's appellate counsel contends the trial court erred in permitting Tracy to discharge his trial attorney and to represent himself when the issue of his present sanity had not been resolved, and in obtaining from him the waiver and stipulation we have previously set forth. We reluctantly agree.

We are reluctant, because we cannot be certain appellant is not playing the game of "waive the lawyer" so vividly described and effectively analyzed in *People* v. *Weston,* 9 Cal.App.3d 330, 334 [87 Cal.Rptr. 922]. But agree we must, because we cannot square the procedure followed in the trial court with the fundamental principles of due process of law.

In the leading case of *Pate* v. *Robinson,* 383 U.S. 375, 384 [15 L.Ed.2d 815, 821, 86 S.Ct. 836, 841], the Supreme Court stated: "But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."

When a doubt has arisen as to a defendant's sanity, and that fact has been judicially declared, we think it equally contradictory, inconsistent and incongruous to permit him to discharge his attorney and represent himself at the hearing where the issue of his sanity is to be determined. The vice in the situation is compounded when he is then led into a stipulation or waiver which reduces the hearing to a mere formality and its result to a foregone conclusion.

The Attorney General concedes "the 'ideal' procedure would have been to determine the sanity issue first and then to proceed to the motion to discharge counsel." However, he urges, since there was no substantial evidence of incompetence and very substantial evidence of competence, "the fact that this procedure was reversed for a few seconds constitutes the merest technicality." We disagree. The contention assumes competent counsel would have conducted the sanity hearing in the same manner Tracy did. (In that event it would have taken but a few seconds.) More important, it

---

[2]The appeal is not barred by Penal Code section 1237.5, even though appellant pled guilty in both cases. The Attorney General concedes the errors asserted on appeal relate to matters which occurred after both pleas were entered and the compliance with Penal Code section 1237.5 is not required.

assumes a defendant, presently sane within the meaning of Penal Code section 1368, who exhibits an understanding of the nature and purpose of the proceedings taken against him, is necessarily mentally competent to discharge his attorney and represent himself.

 Provided other tests are met, a *mentally competent* defendant may waive his right to counsel and represent himself. (*People* v. *Terry,* 224 Cal.App.2d 415, 418 [36 Cal.Rptr. 722]; *People* v. *Addison,* 256 Cal. App.2d 18, 25 [63 Cal.Rptr. 626].) The mental competence to waive the right to counsel is not to be equated with the competence to stand trial under Penal Code section 1368. It is one thing to be mentally competent to stand trial with the assistance of counsel and quite another to be mentally competent to proceed without that assistance. Here all the medical evidence before the court indicated Tracy was suffering from serious mental illness. The psychiatric report from the Department of Corrections and the report of Dr. Kosewick both diagnosed appellant's illness as a schizophrenic reaction of a paranoid type, and both recommended he be hospitalized for treatment. We think it was error of constitutional proportion to permit appellant, under these circumstances, to discharge his attorney and represent himself before the hearing was held to determine his present sanity.

 Where a doubt has arisen as to a defendant's sanity, it should be assumed he is not capable of acting in his own best interest (*People* v. *Hill,* 67 Cal.2d 105, 115 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Kottler,* 1 Cal.App.3d 379, 382 [81 Cal.Rptr. 745]), and he should not be permitted to discharge his attorney until that doubt has been resolved. Even when a properly conducted sanity hearing justifiably results in a finding the defendant is presently sane within the meaning of Penal Code section 1368, he should not be permitted to discharge his attorney and represent himself when, as here, the evidence shows he is suffering from a mental illness which adversely affects his powers of reason, judgment and communication.

 What we have said applies technically only to action No. C-19511, because no Penal Code section 1368 motion was made in action No. C-20026. Despite the fact appellant had been referred to the Department of Corrections in both actions, and despite the fact the Department's diagnostic report clearly referred to both actions, a Penal Code section 1368 hearing was held only in action No. C-19511. If a doubt arose as to appellant's sanity in one case, it must have arisen in the other, which was pending at the same time. Appellant should have been afforded a proper sanity hearing in both cases and should not have been permitted to discharge his attorney and represent himself in either of them.

The judgments of conviction are reversed. The trial court is directed to appoint counsel, other than the public defender, to represent appellant; to hold a proper hearing under Penal Code section 1368 in both case No. C-19511 and No. C-20026 to determine appellant's present sanity; and to take such further steps as may be necessary to bring the cases to proper conclusion.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 4, 1970, and respondent's petition for a hearing by the Supreme Court was denied December 17, 1970. McComb, J., and Mosk, J., were of the opinion that the petition should be granted.