**UNITED STATES of America, Appellee,**

v.

**Jacob ZEDNER, Defendant-Appellant.**

**Docket No. 98–1615**

United States Court of Appeals, Second Circuit.

Argued June 8, 1999

Decided Oct. 1, 1999.

Edward S. Zas, the Legal Aid Society Federal Defender Division Appeals Bureau, New York, NY, for Appellant.

Leonard Lato, Assistant United States Attorney, New York, N.Y. (Zachary Carter, United States Attorney for the Eastern District of New York, Susan Corkery, Assistant United States Attorney, on the brief), for Appellee.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and TRAGER, District Judge.*

PER CURIAM:

The narrow issue presented by this case is whether, after defendant's competency to proceed to trial was reasonably placed in doubt by defendant's pre-trial conduct, the district court erred by allowing defendant to proceed pro se at a competency hearing without ever having determined defendant's competency to make a knowing and intelligent waiver of the right to representation by counsel. We conclude that this did constitute error and we therefore remand this matter for a new competency hearing at which defendant will be represented by counsel.

## Background

### (1)

Defendant was arrested by Special Agents of the United States Secret Service on March 13, 1996. On April 4, 1996, defendant was charged with seven counts of scheming to defraud financial institutions in violation of 18 U.S.C. § 1344, and one count of knowingly possessing counterfeit bonds in violation of 18 U.S.C. § 472.

In its indictment, the government alleges that in March 1996, defendant approached a number of financial institutions and attempted to open an account with a bogus $10 million "Treasury Bond" issued by a non-existent "Ministry of Finance of U.S.A." The government further claims that defendant falsely claimed that he was the president of the Godian Fellowship, a well-established charitable organization, and that its founding members had died. Finally, over defendant's denials, the government asserts that defendant intended to borrow $300,000 against the bond.

The bond contains numerous glaringly misspelled words, such as "Onited States." When questioned about the misspellings by agents of the financial institutions, defendant proffered various preposterous explanations for them.

### (2)

After defendant's arrest, the district court appointed counsel for him pursuant to the Criminal Justice Act. Defendant was arraigned on April 16, 1996, and appeared

---

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

before the district court six times over the following thirteen months, each time represented by his court-appointed counsel. On May 2, 1997, one week before jury selection was to begin, the district court conducted a final pre-trial conference. At that conference, defendant's court-appointed counsel moved to be relieved on the ground that defendant intended to proffer a defense at trial which the attorney, as an officer of the court, could not in good faith present. Asked by the court to elaborate, counsel explained that defendant believed the bonds were genuine and intended to subpoena several high level United States officials, including the Chairman of the Federal Reserve and the Secretary of the Treasury, to make his case. Defendant then confirmed for the Court that his counsel refused to credit his defense, explaining further that "he think I am crazy." (Transcript 5/2/97 at 20–21.)

Following this exchange, the district court, *sua sponte*, ordered the appointment, pursuant to 18 U.S.C. § 4241(b), of a board certified psychiatrist to examine defendant for the purpose of determining if he was mentally competent to stand trial. The district court indicated that if defendant was found competent in the report, the court would relieve counsel and permit defendant to proceed *pro se* and appoint a Legal Aid attorney as stand-by counsel. The following colloquy then took place:

> The Defendant: Oye, yoi. How can I do that, Your Honor with the English the way that I have it. How will the people understand me.
>
> The Court: I understand you.
>
> The Defendant: Okay. If your Honor does, then fine.

(*Id.* at 22.) The Court concluded the conference by adjourning the trial pending the receipt of the psychiatrist's report.

The psychiatrist conducted a one and one half hour interview with defendant on July 15, 1997, and by letter dated August 5, 1997, informed the district court of her conclusion that defendant was competent to stand trial. Among other observations, the psychiatrist noted that defendant claimed that: "he was given a power of attorney by a court in China to negotiate the bond"; people were sent to court to "calm him down"; and that he was being prosecuted in connection with a "very delicate" matter of "international security." Despite these observations, the psychiatrist detected "no evidence of a major mental illness." The psychiatrist cautioned, however, that defendant's condition was difficult to assess, and that "without additional [psychiatric] history, it would be impossible to make a psychiatric diagnosis."

During the same period in which defendant was being evaluated by a psychiatrist, the district court granted defendant's attorney's motion to be relieved as counsel and appointed a legal aid attorney in his place. At a hearing on September 8, 1997—the first hearing after Dr. Goldstein's report—defendant moved to represent himself. He complained that his new attorney, like his former attorney, was unwilling to represent him in the manner he desired. More specifically, she too refused to subpoena many of the individuals that defendant identified and she encouraged him to plead guilty to a crime he denied committing. Without holding a competency hearing, the district court granted defendant's motion to represent himself and re-assigned his second court-appointed counsel to serve only in an advisory capacity. Recognizing that the government would likely move to quash at the appropriate time, the court also directed the attorney to assist defendant in preparing subpoenas for several prominent officials, including President William Jefferson Clinton, Alan Greenspan, and Madeline Albright.

Over the next thirteen months, defendant engaged in extensive discovery. To gather support for his claim that the financial instruments in question were genuine, defendant issued thirty-three subpoenas to witnesses, many of whom appeared to have

little or no information regarding the issues in his case. In addition to the officials identified during the September 8 conference, defendant sought testimony from Attorney General Janet Reno, Senator Alphonse D'Amato, Mrs. Chiang Kaishek, Treasury Secretary Robert Rubin, and National Security Advisor to the White House Sandy Berger.

On October 14, 1998, the scheduled start date for defendant's trial, advisory counsel informed the court that defendant proposed to conduct the entire trial by himself, without her assistance, and that it was still his strategy to contend that the bonds were genuine. This prompted the court to express renewed doubt as to defendant's mental competency, particularly because the defendant, after his subpoenas had issued, had spoken to representatives of various financial institutions, and the Department of Treasury, all of whom had attested that the bonds were in fact counterfeit. The trial court, concerned that a jury would almost certainly convict defendant of the crimes charged, given his proposed defense, and send a person who was quite possibly mentally incompetent to federal prison, suggested that it might let the case proceed to trial and then dismiss it after the government's case.

Faced with this prospect, the government moved, pursuant to 18 U.S.C. § 4241(a), to have defendant committed to the custody of the Attorney General for a competency examination. The district court then held a competency hearing at which defendant waived his right to counsel and proceeded pro se. Defendant was the sole witness at the hearing at which he was questioned by the government and the trial court. Although defendant's advisory counsel was present, she did not ask or object to a single question.

Following the hearing, the district court issued a pair of orders in which it found defendant incompetent to stand trial and committed him to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d)(1) for a reasonable period of time, not to exceed four months, "to determine whether there [was] a substantial probability that in the foreseeable future he [would] attain the capacity to permit the trial to proceed." The court stayed its order of commitment pending this appeal.

### Discussion

On appeal, defendant, now represented by counsel, contends that where a trial court has cause to doubt a defendant's competency to stand trial, it must appoint counsel to serve until the competency issue is resolved.

The Court is not aware of any case other than this one in which a defendant who proceeded pro se at a competency hearing has challenged a finding that he was incompetent to proceed to trial. All of the cases cited by the parties involve convicted defendants who argued that they should have been represented at competency hearings at which they were ultimately found to be competent. In the first case in which we grappled with the issue, we held that "where a trial court has sufficient cause to doubt the competency of a defendant to make a knowing and intelligent waiver of the right to counsel, it must appoint counsel—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency hearing." *United States v. Purnett*, 910 F.2d 51, 56 (2d Cir.1990). In subsequent cases, we clarified that *Purnett* did not create a per se rule that defendants are required under all circumstances to accept counsel at every competency hearing. For example, in *United States v. Morrison*, 153 F.3d 34, 47 (2d Cir.1998), we held that it was not error for a district judge to allow a defendant to represent himself at a competency hearing held "as a precautionary measure" after an initial determination that the defendant was competent was made while the defendant was represented by counsel.

The case now before us is controlled by *Purnett*. In *Purnett*, much as in this case,

the defendant's second appointed counsel asked the court to relieve him from his duties because of a "personal difficulty" in his relationship with the defendant. 910 F.2d at 53. By the time counsel entered this request, the defendant had already "exhibited unusual behavior" at a number of court appearances. *Id.* at 52. On several occasions, for instance, the defendant appeared unusually agitated and repeatedly "snapp[ed]" at his appointed counsel. *Id.* Despite the defendant's strange behavior, which prompted the court to express doubt as to the defendant's competency to stand trial, the court granted his motion to proceed pro se. The court also granted a government motion to have defendant examined under 18 U.S.C. § 4241, and the examining psychiatrist subsequently issued a report finding defendant competent to represent himself at trial.

After reviewing the psychiatrist's report, the court asked the defendant whether he had reviewed the findings and whether he wanted a hearing. The defendant responded that he had received "a fabricated report" and that as far as a hearing was concerned, "they" could do "whatever they want to do." 910 F.2d at 53. The judge concluded that the defendant did not want a hearing or an attorney and found him competent to continue representing himself. *Id.* at 54. On appeal, the defendant argued "that his waiver of counsel was ineffective because it was made prior to a valid determination of his competency, and that the determination of his competency was invalid because it was made while [the defendant] was not represented by counsel." *Id.* This Court accepted the defendant's argument and reversed.

■ The facts of this case are very similar to those of *Purnett.* Here, particularly at the May 2 conference, it was clear from defendant's behavior that there was substantial reason to doubt his competence. Defense counsel advised the court that

after due diligence he could not find any support for defendant's contention that the bonds were legitimate. Defendant's dogged insistence that the bonds were nevertheless genuine, even after being informed otherwise by numerous officials at various financial institutions, should have given the court pause to doubt defendant's ability to represent himself at a competency hearing. Defendant's decision to subpoena numerous high level government officials with no apparent connection to this case should have fueled additional skepticism as to defendant's ability to knowingly and voluntarily waive his right to counsel. In fact, the court was concerned enough about defendant's behavior that it *sua sponte* ordered a psychiatric examination at the conclusion of the May 2 conference, and, because its concerns had not been satisfactorily resolved, subsequently held a competency hearing on the eve of the scheduled trial. Even with its long-standing and well founded concerns, however, the court granted defendant's request to proceed pro se before it ever resolved the issue of his competency at that hearing. It was error for the district court to proceed in this way and to have allowed defendant to appear pro se at his own competency hearing.[1] *Purnett,* 910 F.2d at 56.

The fact that the competency hearing did not take place until thirteen months after defendant waived his right to counsel—following the receipt of the equivocal psychiatrist's report—in no way alters the result. Despite the government's argument to the contrary, defendant's need for counsel at the competency hearing was not diminished by the length of time that passed between the waiver of his right to counsel and the district court's holding of the hearing. Defendant had exhibited strange behavior long before he waived his right to counsel and there is no indication that his behavior improved such that the court should have become less concerned

---

1. The presence of advisory counsel at defendant's competency hearing did not provide defendant with representation sufficient to

satisfy his Sixth Amendment right to counsel. *See Purnett,* 910 F.2d at 55–56.

thereafter. If anything, the equivocal nature of the psychiatrist's report and defendant's conduct during the intervening thirteen month period made defendant's need for counsel all the more evident.

 As this court held in *Purnett*, where a district judge has substantial reason to doubt a defendant's competence, the court may not assume that the defendant's waiver of counsel is knowing and intelligent. Rather, the court must hold a competency hearing and appoint counsel to serve at least through that proceeding. As the district court, did not do so in this case, its order committing the defendant to the custody of the Attorney General must be vacated.[2]

### Conclusion

The order of the district court is vacated and the case remanded for a new competency hearing at which defendant will be represented by counsel.

2. As the record shows substantial reasons to doubt the defendant's competence, thus triggering the protection of *Purnett*, we need not decide whether a defendant may ever be committed on the basis of a hearing at which the defendant was unrepresented.