[No. C051338. Third Dist. May 29, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD ROBINSON, Defendant and Appellant.

608

## Counsel

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—Defendant was convicted by jury of burglary (Pen. Code, § 459) and petty theft with a prior (Pen. Code, § 666). The jury found defendant had two "strike" convictions (Pen. Code, § 667, subds. (b)–(i)), and four prior prison terms (Pen. Code, § 667.5, subd. (b)). The trial court struck two of the prison term allegations and found two others were not separate terms. It sentenced defendant to an aggregate term of 26 years to life.

On appeal defendant contends the trial court erred in failing to appoint counsel for defendant, who at that time was representing himself, when the court declared a doubt as to defendant's competency. Defendant contends this denial of the right to counsel is prejudicial per se and requires reversal. Defendant further contends the trial court abused its discretion in failing to appoint two doctors to examine defendant.

We find the trial court erred in failing to appoint counsel to represent defendant at the second competency hearing. Whenever the trial court declares a doubt as to defendant's competency to stand trial and suspends proceedings for an evaluation under Penal Code section 1368, counsel must be appointed to represent defendant. Given the unusual circumstances of this case, in which a competency report was prepared, a new trial may not be required. Instead, we reverse and remand for a retrospective competency hearing. In the event defendant is found to have been competent, the judgment will be reinstated. Since defendant did not inform the court that he was not seeking a finding of mental incompetence, the court did not err in failing to appoint a second expert to examine defendant.

## FACTS

T.A. worked at More For Less, a convenience store where defendant was a regular customer. On January 25, 2005, defendant had been in the store several times. He wanted T.A. to sell him a single cigarette. She told him she could not.

At midnight, T.A. left the store by the glass exit door, locking it behind her. About 45 minutes later, her manager called and said the broken-window alarm had gone off. T.A., who lived nearby, went to the store. She found the exit door smashed.

When an officer arrived they entered the store. T.A. noticed cigarettes and alcohol were missing. A hat defendant had been wearing that day was in the driveway.

D.R., who worked at a nearby business, heard a crash around 1:00 a.m. He saw an individual go into More For Less and then leave.

California Highway Patrol Officer Ronald Ross was parked at Tehama-Vine Road in Mill Creek Park the next morning. He had been dispatched to recover a stolen vehicle. He heard someone say, "Help me, please help me." He saw defendant who was drunk, cold, wet, muddy and missing a shoe. Defendant said he was cold and thought he would die. Defendant told the officer he had been drinking all night and asked the officer to take him home. Ross took him to defendant's daughter's house. Once there, defendant's ex-wife asked the officer if defendant was drunk. When the officer said yes, she told him to take defendant to jail or detox. She did not want him influencing the grandkids.

Detective David Greer learned that morning that someone was in custody for being drunk in public who might be a suspect in a burglary. Detective Greer went to the jail and learned that defendant was sleeping. He checked defendant's possessions and found two packs of cigarettes similar to those stolen. That afternoon, when defendant was awake, Detective Greer interviewed him. At first defendant denied any involvement in the burglary of More For Less, but he later admitted he used a bolt from a braking system of a railroad car to break the glass door. He took two bottles of Black Velvet whiskey and three packages of cigarettes and left. Defendant drew a diagram for Detective Greer from which Greer was able to locate the two bottles and one pack of cigarettes. Defendant told Detective Greer the two packs of cigarettes in his possession had been taken from More For Less.

Defendant called T.A. about six months after the burglary and said he was sorry.

Before trial defendant told the court he wanted to "go pro per." The court asked defense counsel if there were any issues under Penal Code section 1368. Counsel indicated he had considered such, but was not prepared to suggest proceedings at that time. The court gave defendant *Faretta* (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) forms.

One week later, defense counsel suggested proceedings under Penal Code section 1368. The court concurred and referred the matter to Dr. Joseph Busey. The parties stipulated one expert would suffice.

Dr. Busey submitted a report in which he found defendant competent. There was no evidence of brain damage or dysfunction or a psychotic

process, although defendant reported he had been " 'drunk and druggin' " since he was 13 years old. Dr. Busey found defendant's self-described diagnoses of bipolar 2 and ADHD (attention deficit hyperactivity disorder) were probably accurate, as well as alcohol dependency. "Underlying it all is a core layer of an anti-social character structure."

Based on the report, the trial court found defendant competent to stand trial. Defendant told the court, "I am crazier than anything you've ever seen." Defendant asserted a man would have to be crazy to confess when he had two strikes. Defendant wanted time to hire an attorney. Defendant suggested the court "[m]ake me pro per until I can hire another attorney." The court agreed; it relieved appointed counsel and allowed defendant to represent himself.

Two weeks later defendant placed the matter on calendar concerning motions he had not filed. Upon inquiry of the court, defendant stated he did not understand court proceedings. The court put the matter on calendar the following week to consider appointment of standby counsel.

At that hearing one week later, on June 6, 2005, the court noted defendant had said he was incompetent and asked for appointment of another psychiatrist the week before. The court stated defendant was not entitled to appointment of another psychiatrist, but it intended to appoint one because it had concerns about defendant's competence. Defendant thanked the court but indicated he did not want cocounsel. The court explained the role of standby counsel. The court appointed Dr. Ray Carlson to examine defendant.

Dr. Carlson submitted a report in which he found defendant competent to stand trial and capable of acting as his own attorney. Defendant appeared with standby counsel and agreed with the report's conclusions; he submitted the matter. The court found defendant competent.

Almost two months later the court indicated it intended to appoint Kenneth Miller as standby counsel. The court tried to convince defendant to accept an attorney. Eventually, defendant agreed to appointed counsel and the court appointed Miller to represent defendant. A few weeks later the court denied defendant's request to remove Miller. The court found defendant was attempting to delay the proceedings. Miller represented defendant at trial.

## DISCUSSION

### I. *Failure to Appoint Counsel for Competency Hearing*

■ This case presents a potential conflict between constitutional rights. A criminal defendant has the right to represent himself under *Faretta v.*

*California, supra*, 422 U.S. 806 [45 L.Ed.2d 562]. In order to exercise this right, a defendant must " 'knowingly and intelligently' " waive the benefits of the right to counsel. (*Id.* at p. 835.)

■ A mentally incompetent defendant may not be put on trial. (*Cooper v. Oklahoma* (1996) 517 U.S. 348, 354 [134 L.Ed.2d 498, 506, 116 S.Ct. 1373]; Pen. Code, § 1367, subd. (a).) "A defendant may not be put [on] trial unless he ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him." ' [Citation.]" (*Cooper, supra*, at p. 354.) A defendant has the right to assistance of counsel in proceedings to determine his competence to stand trial. (See *Estelle v. Smith* (1981) 451 U.S. 454, 469–471 [68 L.Ed.2d 359, 373–374, 101 S.Ct. 1866]; *Kirby v. Illinois* (1972) 406 U.S. 682, 688–689 [32 L.Ed.2d 411, 417, 92 S.Ct. 1877]; *Appel v. Horn* (3d Cir. 2001) 250 F.3d 203, 215 [competency hearing is critical stage of a trial]; *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 503 [122 Cal.Rptr.2d 673] [right to counsel clearly applies to Pen. Code, § 1368, competency hearing].)

■ The competency standard is the same whether the question is competency to stand trial or competency to waive counsel and represent oneself. (*People v. Blair* (2005) 36 Cal.4th 686, 711 [31 Cal.Rptr.3d 485, 115 P.3d 1145].)

Defendant contends the trial court denied him the constitutional right to assistance of counsel by failing to appoint counsel to represent him on June 6, 2005, when the court declared a doubt as to his competency. Defendant argues that since there was a doubt as to his competency, his exercise of his *Faretta* right could not be considered a knowing and intelligent waiver of his right to counsel. The Attorney General disagrees, contending the trial court properly balanced defendant's right of self-representation with the concern of proceeding to trial with a mentally incompetent defendant.

In *Pate v. Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836], the state insisted the defendant waived the defense of his competence to stand trial by failing to demand a competency hearing. The high court rejected this contention. "But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial. [Citation.]" (*Id.* at p. 384.)

In *People v. Tracy* (1970) 12 Cal.App.3d 94 [90 Cal.Rptr. 375], the trial court permitted the defendant to represent himself while proceedings to

determine his sanity were pending. Relying on *Pate*, the appellate court reversed the judgment. "When a doubt has arisen as to a defendant's sanity, and that fact has been judicially declared, we think it equally contradictory, inconsistent and incongruous to permit him to discharge his attorney and represent himself at the hearing where the issue of his sanity is to be determined." (*People v. Tracy*, at p. 102.) "Where a doubt has arisen as to a defendant's sanity, it should be assumed he is not capable of acting in his own best interest [citations], and he should not be permitted to discharge his attorney until that doubt has been resolved." (*Id.* at p. 103.)

A federal court reached a similar conclusion in *U.S. v. Purnett* (2d Cir. 1990) 910 F.2d 51. In *Purnett*, appointed counsel asked to be relieved, citing personal difficulties with the defendant. The defendant asked to represent himself, despite the court's strongly worded cautions against that course of action. At the end of the conference the court raised the question of the defendant's competence to stand trial and the court granted the government's motion to have him examined. A psychiatric report concluded the defendant was competent to stand trial and to represent himself. At the hearing on the report the defendant appeared with counsel acting as his advisor. The defendant refused to say whether he challenged the report and the court found him competent to stand trial. (*Id.* at p. 54.)

On appeal the defendant contended his waiver of counsel was ineffective because it was made prior to a valid determination of his competency. (*U.S. v. Purnett, supra*, 910 F.2d at p. 54.) The government contended the defendant's position created a "catch-22" for the trial court because refusing to permit a waiver of counsel prior to the competency hearing would be appealable as a denial of the constitutional right to self-representation. The Second Circuit disagreed; "the trial court should not accept a waiver of counsel unless and until it is persuaded that the waiver is knowing and intelligent. Logically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel. [Citation.]" (*Id.* at p. 55.) The court also rejected the argument that the presence of standby counsel was sufficient representation. Nothing in the record indicated standby counsel had received or reviewed the report and all of the trial court's questions were directed at the defendant. (*Id.* at pp. 55–56.) The court assumed an attorney acting as the defendant's counsel would have been more inclined to challenge the report. (*Id.* at p. 56.) "We therefore hold that where a trial court has sufficient cause to doubt the competency of a defendant to make a knowing and intelligent waiver of the right to counsel, it must appoint

counsel—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency issue." (*Ibid.*)

The dissent argued the majority was penalizing the trial court for its thoroughness; the record indicated the defendant was almost certainly competent when the court ordered the psychiatric report. (*U.S. v. Purnett, supra,* 910 F.2d at p. 56 (dis. opn. of Timbers, J.).) While absence of counsel where competency was legitimately in question would render the proceedings void under the Sixth Amendment, there was no need to blindfold the judge from responding to the circumstances at hand. The decision created a dilemma: to force counsel on a pro se defendant and risk a *Faretta* challenge, or allow the defendant to proceed pro se and risk the instant challenge. The matter should be left to the trial court's discretion. (*Ibid.*)

The Second Circuit followed *Purnett* where the defendant was found incompetent to stand trial in *U.S. v. Zedner* (2d Cir. 1999) 193 F.3d 562. In *Zedner,* the trial court granted the defendant's request to proceed pro se before it resolved the issue of his competency. The Second Circuit remanded for a new competency hearing at which the defendant was represented by counsel. (*Id.* at p. 567.)

The Attorney General seeks to distinguish *People v. Tracy, supra,* 12 Cal.App.3d 94, due to the timing of the *Faretta* motion. In *Tracy* and the federal cases each defendant sought to assert his *Faretta* rights while his competence was in question. Here, by contrast, the trial court granted the defendant's *Faretta* motion *after* finding him competent to stand trial based on Dr. Busey's report. Thus, the Attorney General argues, the court had no reason to cast doubt on defendant's competency to waive assistance of counsel. When the court subsequently raised a concern about defendant's competence, defendant was presumed to still be competent and appointment of counsel was unnecessary. (See *People v. Rojas* (1981) 118 Cal.App.3d 278, 285 [174 Cal.Rptr. 91] ["defendant is presumed to be competent and has the burden of showing incompetence by a preponderance of evidence"].)

Although the Attorney General does not cite any authority in support of his position, such authority exists. "*Purnett* did not create a per se rule that defendants are required under all circumstances to accept counsel at every competency hearing." (*U.S. v. Zedner, supra,* 193 F.3d 562, 565.) In *U.S. v. Nichols* (2d Cir. 1995) 56 F.3d 403, the court upheld a waiver of the right to be present at trial even though waiver occurred the day before a competency hearing. "We decline to extend *Purnett* into an automatic adjournment rule every time the district court inquires further into competency. Such a rule

would allow a manipulative defendant (as Judge Korman suspected [defendant] to be) to bring the trial to a halt at his whim." (*Id.* at p. 415.) The trial judge did not harbor serious doubts about the defendant's competency, but ordered the additional hearing "as a precautionary measure." (*Id.* at p. 414.)

In *Wise v. Bowersox* (8th Cir. 1998) 136 F.3d 1197, after a thorough competency hearing, the court permitted the defendant to exercise his right of self-representation. At a second competency hearing the court allowed him to continue pro se. The defendant contended on appeal he was denied due process. The Eighth Circuit disagreed because the defendant was properly representing himself; furthermore, at the second competency hearing, standby counsel, who believed the defendant was incompetent, was allowed to speak and to examine the experts who testified. Both points of view on competency were well represented and there was "a fair inquiry" into the defendant's competence. (*Id.* at p. 1203.)

The Attorney General contends the trial court properly balanced the competing concerns of self-representation and not trying an incompetent defendant by appointing standby counsel. In *Wise v. Bowersox, supra,* 136 F.3d 1197, standby counsel took part in the competency determination, arguing on the defendant's behalf. Here, as in *Purnett,* standby counsel did not participate, or even speak. Nothing in the record indicated standby counsel had received or reviewed the doctor's report and the court addressed only defendant. (*U.S. v. Purnett, supra,* 910 F.2d at pp. 55–56.) To the extent *Wise* rests upon the participation of standby counsel, it is distinguishable.

In *U.S. v. Morrison* (2d Cir. 1998) 153 F.3d 34, the court held it was not error to allow the defendant to remain unrepresented at a competency hearing held as a "precautionary measure" after the court had already found the defendant competent to stand trial and to waive counsel. (*Id.* at p. 47.) "We do not require a trial court to reappoint counsel to a pro se defendant every time it revisits the issue of competency. [Citations.]" (*Ibid.*) In *Morrison,* after the court found the defendant competent to stand trial and waive the right to counsel, the court had subsequent concerns about the defendant's competence. The court asked a doctor to attend the hearing and observe the defendant while he represented himself. The court then called the doctor to the witness stand and advised the defendant and standby counsel that the doctor was available for cross-examination. (*Id.* at p. 40.)

We find *Morrison* distinguishable. There the court took informal steps to dispel concerns about the defendant's competency; thus, the circuit court found the competency hearing was only a "precautionary measure." (*U.S. v. Morrison, supra,* 153 F.3d at p. 47.) By contrast, here the court suspended

proceedings and made a formal order appointing Dr. Carlson to investigate defendant's competence under Penal Code section 1368.

Penal Code section 1368, subdivision (a) provides: "If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. *If the defendant is not represented by counsel, the court shall appoint counsel.* At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time." (Italics added.) The court may order a hearing regardless of whether counsel believes the defendant is mentally incompetent. (Pen. Code, § 1368, subd. (b).)

. ■ We recognize the bind a trial court is placed in when a doubt arises as to the competence of a defendant who is representing himself. The trial court has to steer a course between two potentially reversible errors: denying the defendant his right to counsel at a competency hearing or denying the defendant his right to self-representation (with the possibility of putting an incompetent defendant on trial). Since the right to counsel applies to a Penal Code section 1368 competency proceeding (*People v. Jablonski* (2006) 37 Cal.4th 774, 803 [38 Cal.Rptr.3d 98, 126 P.3d 938]; *Baqleh v. Superior Court, supra,* 100 Cal.App.4th 478, 503), whenever a trial court makes a formal order suspending proceedings and appointing a doctor pursuant to Penal Code section 1368, the court must appoint counsel to represent the defendant. If the court has a reasonable doubt as to the defendant's competency to stand trial, that doubt should extend to the defendant's competency to waive counsel and represent himself. ■ The trial court erred in failing to appoint counsel for defendant once it declared a doubt as to his competency to stand trial.

Defendant contends denial of the right to appointed counsel is reversible per se. (*People v. Bigelow* (1984) 37 Cal.3d 731, 744 [209 Cal.Rptr. 328, 691 P.2d 994].) "The compelling reason for the rule of prejudice per se is that no realistic measure of prejudice resulting from counsel's nonparticipation can be made when, because of the very absence thereof, the record fails to reflect what different direction the proceedings might have taken and what different results might have obtained." (*In re William F.* (1974) 11 Cal.3d 249, 256 [113 Cal.Rptr. 170, 520 P.2d 986], disapproved on another point in *People v. Bonin* (1988) 46 Cal.3d 659, 695, fn. 4 [250 Cal.Rptr. 687, 758 P.2d 1217].) A Sixth Amendment violation, however, requires automatic reversal only when the constitutional violation pervades the entire criminal proceed-

ing. (*Satterwhite v. Texas* (1988) 486 U.S. 249, 257–258 [100 L.Ed.2d 284, 294–295, 108 S.Ct. 1792].)

■ The Attorney General contends that if counsel should have been appointed for defendant, reversal is not required. The case could be remanded for a retrospective competency hearing. The Attorney General relies on *People v. Ary* (2004) 118 Cal.App.4th 1016 [13 Cal.Rptr.3d 482], in which the defendant was wrongly denied a competency hearing. Reviewing the applicable state and federal authorities, the court concluded that in some cases the due process violation of denial of a competency hearing could be cured by holding a retrospective competency hearing. (*Id.* at pp. 1025–1028.) "We emphasize, however, that it is the rare case in which a meaningful retrospective competency determination will be possible. The inherent difficulty of such a determination, of course, is that there will seldom be sufficient evidence of defendant's mental state at the time of trial on which to base a subsequent competency determination. [Citation.]" (*Id.* at p. 1028.) Due to the highly unusual nature of the case, the court remanded for a determination of whether a retroactive competency hearing could be held. (*Id.* at pp. 1029–1030.) During pretrial hearings on whether he was competent to waive *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]) and whether his subsequent confession was voluntary, extensive expert testimony and evidence was proffered regarding the defendant's mental retardation and his ability to function in the legal arena. This evidence was relevant to a competency hearing. (*Id.* at p. 1029.)

■ "Four factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights: '(1) The passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.' " (*U.S. v. Collins* (10th Cir. 2005) 430 F.3d 1260, 1267 [constructive denial of counsel at competency hearing].)

These factors weigh in favor of a retrospective competency hearing in this case. The disputed competency hearing occurred in the summer of 2005 and trial was held the following September, less than two years ago. Medical evidence of defendant's mental state at the time was before the court in Dr. Carlson's report. Significantly, the first competency hearing, which defendant does not challenge, was conducted solely on the basis of the doctor's report. The record contains statements by defendant from which his

mental competence can be assessed. Further, the absence of counsel at a competency hearing does not require speculation about future proceedings because defendant was represented at trial by an attorney.[1] We reverse and remand the matter for a retrospective competency hearing for which counsel shall be appointed for defendant. In the event defendant is found to have been competent, the judgment shall be reinstated.

## II. *Failure to Appoint Two Experts*

Defendant next contends the trial court erred in failing to appoint two doctors to evaluate defendant after the court declared a doubt as to his competency to stand trial. For the first competency hearing, the parties stipulated to a single doctor. There was no similar stipulation for the second competency hearing.

Penal Code section 1369, subdivision (a) provides in part: "The court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. In any case where the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall appoint two psychiatrists, licensed psychologists, or a combination thereof." The appointment of two experts "provides a minimum protection for the defendant against being incorrectly found incompetent to stand trial." (*People v. Harris* (1993) 14 Cal.App.4th 984, 996 [18 Cal.Rptr.2d 92].)

The requirement of appointing two experts, however, is only triggered when the defendant or the defendant's counsel "*informs the court*" that the defendant is not seeking a finding of incompetence. (*People v. Harris, supra*, 14 Cal.App.4th 984, 996.) Although defendant stated he agreed with Dr. Carlson's report, when the court appointed Dr. Carlson defendant did not inform the court he was not seeking a finding of incompetence. Indeed, the court's action was spurred, in part, by defendant's prior statement that he was incompetent. Because the statutory requirement for triggering a mandatory appointment of two experts was not met, the trial court did not err in appointing only one expert.

---

[1] Counsel did not declare a doubt as to defendant's competence to stand trial and no claim of defendant's incompetence is made on appeal.

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court with instructions to hold a retrospective competency hearing, to be calendared forthwith. Counsel shall be appointed to represent defendant at such hearing. In the event defendant is found to have been competent to stand trial, the judgment shall be reinstated. In the event defendant is found to have been incompetent to stand trial, defendant shall receive a new trial.

Sims, Acting P. J., and Raye, J., concurred.