Filed 8/27/14  P. v. Collins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D063767 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CD245069) |
| CHARLES COLLINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan, Judge.  Appeal dismissed as moot.


Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Robin Urbanski and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Charles Collins appeals from a judgment finding him mentally incompetent, committing him to a state hospital, and ordering the administration of antipsychotic medication. Collins contends we must reverse the judgment because the court denied him the ability to speak at his commitment hearing, improperly allowed the parties to stipulate to his evaluation by one doctor, committed him without sufficient evidentiary support, and ordered the administration of psychotropic medication without sufficient evidentiary support. We conclude the appeal is moot and dismiss it.

## BACKGROUND

In an amended complaint, the People charged Collins with one count of assault with a deadly weapon on a peace officer (Pen. Code,[1] § 245, subd. (c)) and one count of assault with a deadly weapon (§ 245, subd. (a)(1)). As to the latter charge, the People also alleged Collins personally used a deadly weapon during the commission of the offense (§ 1192.7, subd. (c)(23)).

After arraigning Collins on the complaint, the court set a readiness hearing. At the readiness hearing, defense counsel informed the court she had spoken with Collins and had a doubt about his competency. She requested the criminal proceedings be suspended.

_____

[1] Further statutory references are also to the Penal Code.

The court granted her request and ordered a mental competency examination for Collins.[2]

A forensic psychiatrist evaluated Collins and prepared two reports: one discussing whether Collins was mentally incompetent (competency report) and one discussing whether Collins should be involuntarily medicated to restore his competency (medication report). The competency report was based in part on a review of records in the People's case file. According to the competency report, these records indicated, "[A] park ranger was investigating a report of a nude man acting irrationally [on] some foot trails in the park. When the ranger checked the area she came upon a man inside of a camping tent. He was told to come out. He said he did not have identification. He became confrontational and combative. Another ranger came. The defendant continued to be combative and pulled a machete. He was shot once [in the abdomen]."

Collins further claimed the Holy Spirit was guiding the events and the government was trying to control him. He asked the rangers if they understood scriptures and said he had restored a woman's spirit and witnessed spiritual light. Some specific statements to the rangers included, "I will speak to you most righteous, but I can, and that it ain't displeasing to the creator about my experiences."

---

[2]    "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369." (§ 1368, subd. (b).)

In addition, when asked why he was shot, he replied, "Have you watched the commercial where the can is crushed, and the can is on the rubble, and then the can appears uncrushed?  That's the best way I can explain it."  He also remarked, "[T]hey're looking through my eyeballs with contact lenses.  I saw over a man's shoulder, and they were watching through my eyeballs on the [I]nternet."

Collins's belongings included 30 pages of handwritten notes.  The notes contained remarks, such as "[A]sketh of that measures for spiritual strength from a prayer not to continue that humans can develop spiritual fill of measures strength.  I asketh that humans not be able to grow spiritual measures for strength by praying and having some of the human pray that another who is trying to build themselves, movements during the building and another."  Regarding law enforcement officers, the notes stated, "[L]aw officers—any that beith of an empirer that has chosen to war against me that ye maker of this world does mind taking a life of that is if tisovaying the laws of the empirer that they beith of that thy glorious power remove the life of those that be instantly."

During the mental competency evaluation, Collins was able to relate that he had been shot, had been charged with assault with a deadly weapon, and had a lawyer representing him.  However, he also related he had camera optics in his eye, he had been under continuous attack for the previous five years, and his being shot was the result of a conspiracy of assassins throughout the country.

Initially, Collins somewhat cooperated with the evaluation, but he was "very delusional" and became more agitated as it went on and insisted the psychiatrist was

4

against him.  He eventually stated he was going to pray the psychiatrist was in an accident.

The psychiatrist diagnosed Collins with a psychotic disorder, not otherwise specified.  In the psychiatrist's opinion, Collins did not have an adequate understanding of the nature of the proceedings against him and could not assist his attorney in a rational manner.  The psychiatrist recommended Collins be referred to a state hospital for restoration to competency.

In the medication report, the psychiatrist stated he believed Collins needed to be treated with a specified antipsychotic medication, which would likely restore Collins's competency.  The psychiatrist also stated he believed Collins lacked the capacity to make medication decisions.

At a hearing following Collins's mental competency evaluation, Collins's counsel stipulated to the psychiatrist's qualifications and submitted on the psychiatrist's recommendation.  The People also submitted.  The hearing then concluded as follows:

> "THE COURT:  All right.  Then I'll go ahead and receive [the psychiatrist's] reports, make these part of the record.  And it's apparently some background, just his opinion, so based on what's contained in the reports, I am going to find that defendant is not mentally competent and commit him to [a state hospital] for the term of three years, recognizing that on the charges, the maximum term for the most serious offense—
>
> "THE DEFENDANT:  *Do I have a chance to speak for myself into this matter?*
>
> "THE COURT:  *Yes, you do, sir.*
>
> "THE DEFENDANT:  *This is the third court hearing, and I haven't been given an opportunity at all.*

5

*"THE COURT: Can I get a chance to speak?*

*"THE DEFENDANT: Yes, sir.*

*"THE COURT: Thank you.*

"—be committed to [a state hospital] for a term of three years, recognizing the maximum term is five years, credits for 73 days. And Mr. Collins needs to take his antipsychotic medication either voluntarily or having it administered to him.[3]

"[Defense counsel], anything further?

"[DEFENSE COUNSEL]: No, thank you.

"THE COURT: Okay. All right. Thank you." (Italics added.)

## DISCUSSION

While this appeal was pending, Collins's competency was restored, he pleaded guilty to committing an assault with a deadly weapon (§ 245, subd. (a)(1)) and admitted personally using a deadly weapon during the commission of the crime (§1192.7, subd. (c)(23)). The court suspended imposition of sentence and placed him on three years of formal probation.

Given these developments, the People contend we should dismiss Collins's appeal as moot. (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 175 ["[A]n appeal is moot if ' "the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief." ' "].) Collins's acknowledges his appeal is

---

3    As Collins acknowledges, the italicized language coupled with the abrupt break in the court's remarks suggests the court and Collins were talking over one another at this point in the proceeding.

technically moot, but he nonetheless invites us to decide it because he contends it involves public interest issues capable of repetition, yet evading review. (See, e.g. *People v. Cheek* (2001) 25 Cal.4th 894, 897-898.) We decline Collins's invitation.

Generally, we are reluctant to exercise our discretion to decide moot issues when the issues are fact-driven, as their resolution is unlikely to provide much guidance in future cases. (See, e.g., *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215 [dismissing moot appeal "given the fact-driven nature of the questions presented"]; *Giles v. Horn* (2002) 100 Cal.App.4th 206, 228 [declining to decide a moot issue "dependent upon the specific facts of a given situation"].) Collins's challenges to the sufficiency of the evidence as reflected in the psychiatrist's competency and medication reports are inherently fact-driven. His remaining challenges are also fact-driven as they turn on the nature of Collins's interjection at the hearing following his mental competency evaluation. The brevity of the interjection and the likely possibility Collins and the court were talking over one another at the time (see fn. 3, *ante*) make it difficult to discern the purpose of the interjection, much less its legal import. Although appellate counsel insists Collins was attempting to inform the court he was not seeking an incompetence finding, thereby triggering the requirement for a second mental competency evaluation,[4] Collins stated in a subsequent writing he had been attempting to

---

4       "Section 1369, subdivision (a) provides in relevant part: 'In any case where the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall appoint two' mental health experts to evaluate the defendant and render an opinion as to his competence." (*People v. D'Arcy* (2010) 48 Cal.4th 257, 281.) This section " 'plainly requires "defendant or the

request the dismissal of his case under section 859b for failure to conduct a timely preliminary examination. Regardless of Collins's purpose, the lack of clarity in the record and the absence of any identified disadvantageous collateral consequences to Collins persuades us this is not an appropriate case for us to exercise our discretion to decide otherwise moot issues. (*People v. Lindsey* (1971) 20 Cal.App.3d 742, 744-745 [appellate court dismissed as moot an appeal of a judgment determining the defendant was not competent to stand trial because the defendant was subsequently restored to sanity and a temporary incompetency determination imposes "no disadvantageous collateral consequences."].)

DISPOSITION

The appeal is dismissed as moot.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

AARON, J.

---

defendant's counsel" to "inform[ ] the court" that the defense is not seeking a finding of incompetence in order to trigger the required appointment of a second mental health expert.' " (*Ibid*.; *People v. Robinson* (2007) 151 Cal.App.4th 606, 618 [requirement for appointment of two experts triggered only when defendant or defense counsel informs the court defendant is not seeking an incompetence finding]; *People v. Harris* (1993) 14 Cal.App.4th 984, 995 [same].)

8