**UNITED STATES of America, Appellee,**

v.

**Edison PURNETT, a/k/a "Panama",**
**Defendant–Appellant.**

**No. 590, Docket 88–1213.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 22, 1989.

Decided July 30, 1990.

Helen Coady, The Legal Aid Soc., Federal Defender Services Appeals Unit, New York City, for appellant Edison Purnett.

John Gleason, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., Matthew E. Fishbein and David C. James, Asst. U.S. Attys., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee, U.S.

Before TIMBERS, CARDAMONE and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

On a November day in 1986 five men entered a branch of the Chase Manhattan Bank in Queens, New York and robbed it at gunpoint. Eight months later appellant, Edison Purnett, was arrested and charged with being one of the crew that committed the crime. At several court appearances following his arraignment he exhibited un-usual behavior leading the district court to direct psychological testing and evaluation of him. The report found Purnett competent to stand trial. Upon its receipt the district court asked appellant if he wanted a hearing on the report and whether he wanted a lawyer. Concluding from Purnett's responses that he wanted neither, a trial date was set and standby counsel appointed.

On this appeal we must resolve a perplexing problem that district court judges face when, while questioning a defendant's competency to stand trial, the accused asserts the right to conduct his own defense without benefit of counsel. To afford defendant the constitutional right to self-representation at the same time the district court is questioning a defendant's competency, necessarily permits a possibly incompetent defendant to waive an equally substantial constitutional right—the right to the assistance of counsel. These conflicting constitutional concerns may be accommodated if a trial court refuses to accept a waiver of the right to counsel until it is satisfied that the defendant fully understands the consequences of such an election and is competent to make it. Since the district court in the case at hand allowed defendant to discharge his appointed counsel before a hearing to determine his competency to stand trial, we must reverse defendant's conviction.

## BACKGROUND

Appellant was convicted after a jury trial in the United States District Court for the Eastern District of New York (Bartels, J.) of one count of conspiracy to commit bank robbery and two substantive counts of bank robbery in violation of 18 U.S.C. §§ 371, 2113(a) & (d) (1988), and sentenced to ten years imprisonment on the latter counts and a concurrent five-year term on the conspiracy count.

When Purnett first appeared before a magistrate, Brian Maas, Esq., was appointed to represent him. Purnett was thereafter arraigned on August 12, 1987 before the district court. Attorney Maas appeared and asked to be relieved as defen-

dant's counsel, advising the court that Purnett no longer desired his services. After agreeing to relieve attorney Maas and to appoint another lawyer, Judge Bartels stated that this would be the last court-appointed attorney for Purnett. The following day attorney Allan Lashley, Esq., was appointed.

On September 15 a status conference was held at which attorney Lashley informed the trial court of a possible plea bargain that he had been negotiating with the government. During the colloquy between defense counsel and Judge Bartels, Purnett interrupted and indicated that he would not cooperate with the government. Following this interruption, attorney Lashley asked the court to relieve him as counsel citing "personal difficulty" with the defendant. Judge Bartels then addressed Purnett and informed him that if he chose not to have Lashley represent him he would have to represent himself. Despite the trial judge's strongly worded cautions against the latter course of action, Purnett responded that he would rather represent himself. In addition, even though Purnett had been communicating since his arrest in English with the court and the prosecutor, he requested that a Spanish interpreter be appointed for all future proceedings so that he and the court could understand one another better. Judge Bartels agreed to assign an interpreter.

At the conclusion of the status conference, the district court judge raised *sua sponte* the question of defendant's competency to stand trial, believing that Purnett had acted in an inappropriate manner in his comments to his own counsel and the court. The trial court asked Purnett and appointed counsel whether defendant should undergo a mental examination. Lashley stated that Purnett might need to be studied. The government then moved to have him examined pursuant to 18 U.S.C. § 4241 (1988), and the district judge granted the motion. In a subsequently submitted affidavit the government stated the basis for the motion:

> When the defendant appeared on September 15, ... he seemed to be visibly agitated for no apparent reason. Indeed he appeared to "snap" at defense counsel without any provocation. Certainly the Court was able to make its own observations of the defendant's unusual behavior at this appearance.

Purnett was sent to the Federal Correctional Facility in Butner, North Carolina for psychological testing and evaluation. The psychiatric staff at the prison examined him for about two weeks and concluded in a December 23, 1987 report that Purnett was competent to stand trial and to represent himself, though it noted it had found a full-scale I.Q. score of 80, deficits in both long and short term memory, and moderate paranoia. The report also stated that Purnett had been discharged from the U.S. Army for a "nervous condition" after serving only three and one-half months. The Army's records reflect that Purnett was a nervous individual who displayed so violent a temper that he was not allowed to train with a rifle.

The district court thereafter held another status conference on January 14, 1988 where Purnett appeared with attorney Lashley acting as his advisor. Judge Bartels asked Purnett whether he had received the psychiatric report. Purnett replied that he had received "a fabricated report." Lashley stated that he had not received it. The district judge informed Purnett that he had a right to a hearing to contest the report's conclusion that he was competent to stand trial, and asked whether he wished to have such a hearing. Purnett answered in ambiguous terms, stating: "I don't want to respond to nothing. I got nothing to respond," and "They do anything they want to. They are accustomed to doing anything they want to. Why do you have to make all these conflicts?" Judge Bartels again asked Purnett whether he wanted a competency hearing. After Purnett responded, "Let them do whatever they want to do," the district judge concluded that defendant did not want a hearing.

The district judge then inquired whether Purnett wanted a lawyer, to which Purnett said, "Let them do what they want to do."

The trial judge interpreted this as a negative response and said

> He has been examined by doctors and he was found sane enough to stand trial, but it's up to him. He can have an attorney, if he wishes, but I can't force him to have one if he is insisting upon trying the case himself.

The district court then set February 1 as the date for trial, and also directed a pretrial hearing on that date to entertain a suppression motion attorney Lashley had filed earlier when acting as Purnett's counsel.

At the start of the proceedings on February 1—after describing for Purnett some of the difficulties he would face proceeding *pro se*—Judge Bartels once more tried to persuade him to accept attorney Lashley as his counsel. After Purnett responded, "I have nothing to say. I don't care," Lashley was appointed as standby counsel. The government then questioned whether Purnett contested his competency to stand trial or wanted a hearing to refute the psychiatric report. The interpreter read the report to Purnett who was then asked if he objected to it. Purnett gave no response. The district court therefore accepted the findings of the report and found Purnett competent to stand trial.

### DISCUSSION

On appeal Purnett contends that his waiver of counsel was ineffective because it was made prior to a valid determination of his competency, and that the determination of his competency was invalid because it was made while Purnett was not represented by counsel. We are mindful of the difficult dilemma facing the district court in this case. Yet in light of Supreme Court precedent regarding waiver of the right to counsel and a defendant's right to representation at all stages in the determination of his competency, appellant is entitled to a new trial.

### A. *Right to Self-Representation*

The right to self-representation is drawn from the very essence of the Sixth Amendment with the accused enjoying the right "to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. These rights to be enjoyed by an accused logically imply a right to defend oneself because it is the defendant that bears the consequences of a criminal trial. *See Faretta v. California*, 422 U.S. 806, 818–20, 95 S.Ct. 2525, 2532–34, 45 L.Ed.2d 562 (1975). This right springs from the English common law principle that counsel was not allowed persons charged with felonies, *id.* at 821–26, 95 S.Ct. at 2534–37, because they were unnecessary. The English Court "took charge of the proceedings, and viewed indictors, prosecutors, jury and prisoner with impartial distrust." T. Plucknett, *A Concise History of the Common Law* 385 (2d ed. 1936). There was little that required expert advice until indictments became technical documents, and then counsel for arguing against them was immediately permitted. *Id.* at 386. But the sense of the ancient principle as adopted and applied through American circumstances remains: it is one thing to have the assistance of counsel when it is requested, it is quite another—as the example of England's Star Chamber illustrates—to have such assistance forced upon a defendant against his will.

The right to self-representation and the assistance of counsel are separate rights depicted on the opposite sides of the same Sixth Amendment coin. To choose one obviously means to forego the other. Thus, in *Faretta* the Supreme Court stated that the right of a criminal defendant to conduct his own defense is constitutionally protected, 422 U.S. at 818–32, 95 S.Ct. at 2532–40, but that "in order to represent himself, the accused must 'knowingly and intelligently' forgo [the benefits of counsel]." *Id.* at 835, 95 S.Ct. at 2541; *see also Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). The federal courts of appeals have consistently held that a defendant's waiver of counsel is

valid only when it can be shown from the record that the waiver was made knowingly and intelligently. *See, e.g., United States v. Grosshans,* 821 F.2d 1247, 1250–51 (6th Cir.), *cert. denied,* 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 505 (1987); *McMahon v. Fulcomer,* 821 F.2d 934, 944–46 (3d Cir. 1987); *United States v. Martin,* 790 F.2d 1215, 1218 (5th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986).

■■■ The government asserts that appellant's position creates a "catch–22" for the district court. It argues that refusing to permit a waiver of counsel—even prior to a competency hearing—would be appealable as a denial of the constitutional right to self-representation. We disagree. A district court is not obliged to accept every defendant's invocation of the right to self-representation. The rule has been aptly stated: " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and only a knowing and intelligent waiver is effective, *see Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Because the assistance of counsel in a criminal proceeding is constitutionally guaranteed, a district court must inquire into defendant's full understanding of the disadvantages of proceeding *pro se,* before it finds a waiver of counsel. *See id.; see also Harding v. Lewis,* 834 F.2d 853, 858 (9th Cir.1987), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); *McMahon,* 821 F.2d at 944; *Martin,* 790 F.2d at 1218.

■■■ Thus, the trial court should not accept a waiver of counsel unless and until it is persuaded that the waiver is knowing and intelligent. Logically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel. *Cf. United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131, 133 (2d Cir.1975) ("the standard of competence for making the decision to represent oneself is vaguely higher than the standard for competence to stand trial"), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976). Yet that is precisely what happened in the instant case. We are not persuaded from the record before us that Purnett made a knowing and intelligent waiver of his right to counsel at the competency hearing.

### B. *Right to Counsel*

Under the Sixth Amendment a defendant is entitled to the assistance of counsel for his defense: this constitutional guarantee has been construed to include critical events in a criminal prosecution such as a competency hearing. *See Estelle v. Smith,* 451 U.S. 454, 469–71, 101 S.Ct. 1866, 1876–77, 68 L.Ed.2d 359 (1981); *Kirby v. Illinois,* 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972); *cf. Pate v. Robinson,* 383 U.S. 375, 386, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966). In *Pate,* the Supreme Court dismissed the suggestion that a defendant whose competency is suspect can still waive his right to thorough competency proceedings:

> The State insists that [the defendant] deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing.... But it is contradictory to argue that a defendant *may* be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial.

383 U.S. at 384, 86 S.Ct. at 841 (emphasis supplied).

■■■ The government contends that attorney Lashley's participation as standby counsel during the January 14 status conference and the February 1 pretrial hearing furnished Purnett sufficient representation to overcome his challenge on appeal. The record reveals that Lashley's participation at these two proceedings was not focused on Purnett's competency. At the January 14 conference the attorney stated that he had not received a copy of the psychiatric report, though a copy had been sent to Purnett. Nor does anything in the record suggest that Lashley received a copy prior to trial on February 1 or that he had an opportunity to review Purnett's copy. At

both proceedings Judge Bartels asked Purnett whether he contested the psychiatric report or wanted a hearing on it; none of these questions was directed to attorney Lashley. Additionally, we must assume that had attorney Lashley been acting as Purnett's counsel at the competency hearing he would have been more inclined to challenge the psychiatric report since *his* responsibility to do so—rather than Purnett's—would have been evident. *Cf. McKaskle v. Wiggins,* 465 U.S. 168, 176–82, 104 S.Ct. 944, 949–53, 79 L.Ed.2d 122 (1984) (role of standby counsel is much more restricted than role of counsel).

■ Refusing to accept a waiver of counsel until the competency of the defendant to make a knowing and intelligent waiver has been established will not create the catch-22 that the government evokes. As in every case, a waiver cannot occur unless it is determined to be knowing and intelligent by the district court. Further, the unwanted participation of appointed counsel during pretrial hearings and conferences is much less intrusive on the right to self-representation than such participation at trial. *Id.* at 179–82, 104 S.Ct. at 951–53. Hence, appointing counsel for the limited period needed to determine whether a defendant is competent to stand trial is not viewed as a denial of the defendant's right to self-representation. *Cf. id.* Requiring a defendant to proceed with counsel *through a competency proceeding* is no greater a denial of a defendant's right to self-representation than that of any other defendant whose waiver has been found not to be knowing and intelligent.

## CONCLUSION

■ We therefore hold that where a trial court has sufficient cause to doubt the competency of a defendant to make a knowing and intelligent waiver of the right to counsel, it must appoint counsel—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency issue. Because here the district court accepted Purnett's waiver of the right to counsel prior to making such a determination and allowed

Purnett to proceed without counsel at pretrial proceedings when his competency was at issue, we must reverse the judgment of conviction and remand for a new trial.

If upon remand Purnett's competency is still in question, the district court shall appoint counsel who will serve at least until that issue is determined. We need not reach appellant's second claim on appeal—that he was denied the right to self-representation at trial—in light of the resolution of this appeal. *Cf. Drope v. Missouri,* 420 U.S. 162, 182, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975).

Reversed and remanded.

TIMBERS, Circuit Judge, dissenting:

Since I disagree with the majority that the district court's competency determination denied Purnett his right to counsel guaranteed by the Sixth Amendment, I respectfully dissent.

The result reached by the majority, which is neither statutorily nor constitutionally required, does no more than penalize the government and the district court for their thoroughness. The record demonstrates that Purnett was almost certainly competent at the time Judge Bartels raised the issue. The comprehensive psychiatric report, undertaken at the behest of Judge Bartels and the government, demonstrated that Purnett was in fact competent. Purnett's standby counsel, Allen Lashley, Esq., also believed that Purnett was able to stand trial. Moreover, Purnett does not seriously challenge on appeal the finding that he was competent. Thus, the majority has attempted to fashion a rule that forces a defendant in a criminal case to accept counsel when the word "incompetency" is even breathed in court.

I recognize that when the defendant's competency is legitimately in question, absence of counsel at a competency determination would render the proceedings, whether formal or informal, void under the Sixth Amendment. *Pate v. Robinson,* 383 U.S. 375 (1966). Contrary to the majority, however, I see no need to turn that princi-

ple on its head and blindfold the judge from responding to the circumstances at hand.

This case is a striking illustration of such a blindfold. Judge Bartels was placed in a classic "Catch–22". On the one hand, if he forced Purnett to accept appointed counsel, he risked violating Purnett's right to proceed *pro se* pursuant to *Faretta v. California*, 422 U.S. 806 (1975). On the other hand, if he did not force Purnett to accept counsel, he risked the instant challenge. Since, by any reasonable observation, Purnett was competent, Judge Bartels chose the latter course. His judgment was sound and should have been upheld by our Court. It is likely that the majority's refusal to do so will force district judges in our Circuit to be baffled by the same dilemma countless times in the future.

It should be remembered, furthermore, that "Judge Bartels is generally regarded as one of the most conscientious and experienced federal trial judges in the United States." *United States v. Busic*, 592 F.2d 13, 38 n. 2 (2 Cir.1978).

We have held that the determination whether or not to hold a competency hearing when a question of competency is raised rests in the sound discretion of the district court. *United States v. Vamos*, 797 F.2d 1146, 1150 (2 Cir.1986), *cert. denied*, 479 U.S. 1036 (1987). The district court is able to assess the condition of the defendant. We are not. While *Vamos* does not govern directly the instant appeal, its logic is in point. Judge Bartels gave careful consideration to the question of Purnett's competency—probably more than was merited—before ruling him competent. On the facts of this case, I do not believe that Purnett was constitutionally entitled to more.

If the majority opinion were to establish a "bright line" rule that would provide clear guidelines for resolutions of dilemmas of this type in the future, I would join the majority. Unfortunately, in my view, the opinion does no such thing. It merely compounds confusion. The reasons for this are several. The case arises from a muddied record. In all probability, Purnett's competence was not the real problem; rather, it was his obstinance and uncooperativeness.

Such factors will be enhanced at a retrial which surely will result in an inevitable conviction in view of the overwhelming evidence of guilt.

All in all, I am satisfied that Judge Bartels exercised commendable discretion. "[C]all this particular ... judgment what one will, it does substantial justice and we [should] not disturb it." *Achilles v. New England Tree Expert Co.*, 369 F.2d 72, 74 (2 Cir.1966) (Medina, J.). From the majority's ill-advised insistence upon doing so, I respectfully but emphatically dissent.

\* \* \* \* \* \*

And if there is to be a new trial, the majority appears to have overlooked warning counsel that when a defendant is convicted of two charges, one of which is a lesser included offense, the lesser included offense is merged into the more serious charge. *Grimes v. United States*, 607 F.2d 6, 11–15 (2 Cir.1979). Purnett was convicted of armed bank robbery pursuant to 18 U.S.C. § 2113(d) (1988) and also of simple bank robbery pursuant to 18 U.S.C. § 2113(a) (1988), a lesser included offense. If the new trial should result in the same pattern of convictions, his conviction pursuant to § 2113(a) would be deemed merged into his conviction pursuant to § 2113(d), and the judgment should be drawn accordingly.